Argued and submitted November 20, 1989, reversed and remanded January 31, reconsideration denied March 21, petition for review denied April 26, 1990 (309 Or 698)

## STATE OF OREGON,
*Appellant,*

*v.*

## RONALD JOSEPH KOLENDAR,
*Respondent.*

(TC 88-12988; CA A60562)

786 P2d 199

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

William Uhle, Portland, argued the cause for respondent. With him on the brief was Thuemmel & Uhle, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

Edmonds, J., specially concurring.

Riggs, J., dissenting.

## GRABER, P. J.

Defendant was charged with driving under the influence of intoxicants (DUII). ORS 813.010. The state appeals a pretrial order suppressing evidence, ORS 138.060(3), and we reverse.

Deputy Davis was investigating a party where minors were consuming alcohol. He learned that a person in a beige pickup truck had bought the alcohol for them. While in the house, he noticed a "lighter color" pickup drive by twice. It attracted his attention, because he thought that it might be the pickup that the minors had described and because it had only one functioning headlight. Davis went outside. When the truck passed again, he hailed it to stop, using his flashlight. He testified that he stopped it because of its color and the missing headlight. He also testified that there was nothing else unusual about the pickup or the manner in which it was being driven.

Davis asked defendant, who was driving, for his license and told him that he had only one functioning headlight. While talking with defendant, Davis smelled the odor of alcohol on his breath. He described the odor as "moderate" (as distinct from "weak" or "strong") and "extremely stale." Davis asked defendant to get out so that he could conduct field sobriety tests. When he got out of the pickup, defendant was unsteady in standing and walking. Davis read him the *Miranda* rights before administering four sobriety tests. Defendant did not pass the tests. Davis arrested him and took him to the county jail, where he underwent a breath test. His blood alcohol reading was .13.

Defendant moved to suppress all evidence obtained after the stop. At the pretrial hearing, he argued that the stop was unlawful, because Davis used the headlight as a pretext to stop him to inquire about furnishing alcohol to minors. He also contended that Davis lacked a reasonable suspicion to stop him or, having stopped him for another reason, to expand the investigation to include DUII.

The trial court found that Davis saw one non-functioning headlight and that he stopped defendant because of it. Those findings are supported by the record and bind us on

appeal. *State v. Warner,* 284 Or 147, 156, 585 P2d 681 (1978). The trial court then held:

> "But that once the defendant gave him his driver's license and absent anything other than the odor of alcohol as described by the officer, that the scope of the inquiry had to be restricted to the purpose of the stop, that being the one headlight. That there was nothing in addition to justify the expansion of this investigation into a driving-under-the-influence-of-intoxicants investigation, given that the officer noted absolutely no other indicia of any problem relating to the operation of the vehicle and the consumption of alcohol."

■ We first observe that the officer's initial stop and inquiry were lawful. An otherwise lawful traffic stop is not invalid merely because the officer suspects that the driver may be involved in other criminal activity. *State v. Zimmerlee,* 45 Or App 107, 112, 607 P2d 782, *rev den* 289 Or 71 (1980). On appeal, defendant does not challenge the lawfulness of the initial stop or the inquiry about his license and headlight. Neither does defendant dispute that he was driving.

■ The state argues that the odor of alcohol, together with the officer's observation of the missing headlight, provided a reasonable suspicion that defendant was driving under the influence of intoxicants. The state claims that the faulty equipment permitted an inference that defendant was inattentive to his driving. However, a non-functioning headlight can result from many factors having nothing to do with a driver's present lack of attention to driving. It adds little, if anything, to the objective basis for the officer's decision to ask defendant to take field sobriety tests. Consequently, the issue here is whether the odor of alcohol on defendant's breath, by itself, supported a reasonable suspicion that he had been driving under the influence of intoxicants and, therefore, justified the expansion of the scope and duration of the stop. *See* ORS 131.615; *State v. Lumsden,* 93 Or App 604, 607, 763 P2d 194 (1988).

Defendant acknowledges that "a reasonable person under the circumstances would be able to determine that defendant had consumed a moderate amount to drink and [had] then driven a motor vehicle." He points out that those facts alone do not constitute the crime of DUII and asserts that the state must show that the consumption of alcohol

affected his "physical or mental capabilities to a perceptible degree." Even if that were true,[1] an officer does not need certainty or even probable cause, but only a reasonable suspicion, to support an investigation. The possibility that there may be a non-criminal explanation for the facts observed or that the officer's suspicion will turn out to be wrong does not defeat the reasonableness of the suspicion. The odor of alcohol on a person's breath is an objective, observable fact that permits an officer reasonably to suspect intoxication. *See State v. Clark*, 286 Or 33, 39, 593 P2d 123 (1979); *State v. Lumsden, supra.*

Reversed and remanded.[2]

**EDMONDS, J.,** specially concurring.

Although I agree with the lead opinion that Deputy Davis had a reasonable suspicion that defendant was driving while under the influence of intoxicants, I do not agree with its conclusion that a moderate, extremely stale odor of an alcoholic beverage on a motorist's breath by itself is sufficient, under the circumstances of this case, to give rise to reasonable suspicion. As the dissent points out, it is not unlawful to drink and then drive. There must be some objective evidence that the defendant's mental and physical faculties are affected by the intoxicant or that he has consumed a sufficient quantity of alcoholic beverage to be in violation of the blood-alcohol limit. Odor on one's breath implies consumption, not effect. The fact that the odor is moderate does not suggest an effect either, though it may vaguely suggest something about the amount consumed.

The fact that the odor is stale relates to the time of consumption, not quantity or effect.[1] However, defendant's inattentiveness to his non-functioning headlight is some evidence that what he consumed had affected him. As the lead opinion points out, "reasonable suspicion" does not require

---

[1] We note, however, that ORS 813.010(1)(a) provides that a person commits the offense of DUII by driving with a blood alcohol content of .08 percent or more, without regard to evidence of actual impairment of driving skills.

[2] The trial court properly rejected defendant's other arguments in support of the motion to suppress, and he does not advance them on appeal.

[1] The record is silent as to what amount of alcoholic beverage must be consumed to produce a moderate extremely stale odor on one's breath.

exclusion of other possible reasons for defendant's inattention. It is the combination of the odor on his breath and his operation of a motor vehicle at night with one headlight out that constitutes reasonable suspicion.

**RIGGS, J.,** dissenting.

The real meaning of the lead opinion is that, if a police officer has a reasonable suspicion that a suspect has been drinking and driving, the officer may require sobriety tests even though there is no reasonable basis for believing that there is any impairment. I do not believe that ORS 813.010 creates criminal liability for drinking and driving, however desirable such legislation might be.

The specially concurring opinion correctly points out that there must be *some* objective evidence that the defendant's mental or physical faculties are affected by the intoxicant or that he had consumed a sufficient quantity of alcoholic beverage to be in violation of the statutory blood alcohol limit. The *only* objective evidence in the record consists of a malfunctioning headlight. There was absolutely no other evidence of inappropriate vehicle usage, slurred speech, watery eyes or any of the many other physical or mental "signs" of inebriation that typically are present.

A headlight or taillight may suddenly quit functioning without the driver's being aware of the loss or being able to repair it immediately. We do not know from this record when, if ever, defendant became aware of his malfunctioning headlight before the officer stopped his vehicle. If there were support in the record, it *might* be reasonable to infer that defendant exhibited inattention, *if* it could be shown that he was aware of the malfunctioning headlight and then made a choice to drive anyway. Such a choice *could* be the result of diminished attention or judgment resulting from the consumption of alcohol. This record has no such evidence.

Without something more than what is provided in this record, there is nothing that could have created reasonable suspicion in the officer's mind that defendant was impaired or that he was exceeding the statutory blood-alcohol limit before the request to perform the field sobriety tests. The trial court so found, and we should affirm.